## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW MEXICO

|  |  |  |
|---|---|---|
| **STATE OF NEW MEXICO ex rel.** | § | |
| **NATIONAL EDUCATION** | § | |
| **ASSOCIATION OF NEW MEXICO, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No.: 1:11-cv-00791-RHS-WDS** |
| **v.** | § | |
| | § | **Hon. Robert Hayes Scott** |
| **AUSTIN CAPITAL MANAGEMENT** | § | |
| **LTD., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:

Richard J. Bedell, Jr. (OH 0038891)
rjbedell@jonesday.com
Geoffrey J. Ritts (OH 0062603)
gjritts@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:      (216) 586-3939
Facsimile:      (216) 579-0212

Dated:  September 13, 2011

David Cunningham
Thompson Hickey Cunningham Clow & April, PA
460 St. Michael's Drive, Suite 1103
Santa Fe, NM  87505

*Attorney for Defendants*
*Austin Capital Management, Ltd., KeyCorp, and*
*Victory Capital Management, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .................................................................................................................. 2

PROCEDURAL HISTORY................................................................................................. 3

ARGUMENT ........................................................................................................................ 6

I.      This Action Is Expressly Barred By FATA's First-To-File Provision. ........................... 7

II.     This Action Is Barred By Res Judicata. ........................................................................ 9

        A.      The Causes Of Action Are The Same........................................................... 10

        B.      The Parties And Their Capacities Are The Same. ........................................ 12

        C.      The Subject Matter Is The Same.................................................................... 13

        D.      This Action Is Barred By A Final Judgment On The Merits In *NEA-NM I.* ....... 14

III.    The Association Lacks Standing To Sue On Behalf Of The ERB Or SIC. .................... 15

CONCLUSION................................................................................................................... 18

CERTIFICATE OF SERVICE ........................................................................................ 19

COI-1464858v3

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE

*Amphibious Partners, LLC v. Redman*,
    534 F.3d 1357 (10th Cir. 2008) ...........................................................................3

*Anaya v. City of Albuquerque*,
    1996-NMCA-092, 122 N.M. 326, 924 P.2d 735 ..................................................10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .........................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................6

*Briggs v. Newberry County School Dist.*,
    838 F. Supp. 232 (D.S.C. 1992), *aff'd* 989 F.2d 491 (4th Cir. 1993) .......................3

*Brockovich v. Cmty. Med. Ctrs., Inc.*,
    No. CV-F-06-1609-LJO-DLB, 2007 WL 738691 (E.D. Cal. Mar. 7, 2007) ...........................17

*Chavez v. City of Albuquerque*,
    1998-NMCA-004, 124 N.M. 479, 952 P.2d 474 ...........................................10, 13

*Conn. Action Now, Inc. v. Roberts Plating Co.*,
    457 F.2d 81 (2d Cir. 1972)................................................................................ 16-17

*Faniola v. Mazda Motor Corp.*,
    No. Civ-02-1011 JB/RLP, 2004 WL 1354471 (D.N.M. Apr. 22, 2004) ........................... 17-18

*First State Bank v. Muzio*,
    100 N.M. 98, 666 P.2d 777 (1983), *overruled on other grounds by*
    *Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 861 P.2d 935 (1993) ...................15

*Ford v. New Mexico Dept. of Public Safety*,
    119 N.M. 405, 891 P.2d 546 (Ct. App. 1994)...................................................9, 11

*GCM, Inc. v. Ky. Cent. Life Ins. Co.*,
    1997-NMSC-052, 124 N.M. 186, 947 P.2d 143 ..................................................18

*Grynberg v. Koch Gateway Pipeline Co.*,
    390 F.3d 1276 (10th Cir. 2004) ....................................................................... 8-9

*In re Estate of Duran*,
    2007-NMCA-068, 141 N.M. 793, 161 P.3d 290 ..................................................14

COI-1464858v3

*Jencks v. Goforth,*
   57 N.M. 627, 261 P.2d 655 (1953) ...................................................................15

*Merswin v. Williams Cos., Inc.,*
   364 F. App'x 438 (10th Cir. 2010) ..............................................................3, 9

*Moffat v. Branch,*
   2005-NMCA-103, 138 N.M. 224, 118 P.3d 732 .................................................12

*Morgan ex rel. United States v. Science Applications Int'l Corp.,*
   No. 07-cv-4612, 2008 WL 2566747 (S.D.N.Y. June 26, 2008) ...........................17

*Myers v. Olson,*
   100 N.M. 745, 676 P.2d 822 (1984) ...........................................................9-12

*Q Int'l Courier, Inc. v. Smoak,*
   441 F.3d 214 (4th Cir. 2006) .........................................................................3

*Rosette, Inc. v. U.S. Dept. of the Interior,*
   2007-NMCA-136, 142 N.M. 717, 169 P.3d 704 .................................................13

*State ex rel. Coll v. Johnson,*
   1999-NMSC-036, 128 N.M. 154, 990 P.2d 1277 ...........................................15-16

*State ex rel. Sofeico v. Heffernan,*
   41 N.M. 219 , 67 P.2d 240 (1936) .............................................................14-15

*Three Rivers Land Co. v. Maddoux,*
   98 N.M. 690, 652 P.2d 240 (1982) *overruled on other grounds by*
   *Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467 (1986) .............10, 12

*United Seniors Ass'n, Inc. v. Philip Morris USA,*
   500 F.3d 19 (1st Cir. 2007) .........................................................................16

*United States ex rel. Burnette v. Driving Hawk,*
   587 F.2d 23 (8th Cir. 1978) .........................................................................16

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,*
   149 F.3d 227 (3d Cir. 1998)........................................................................7-8

*United States ex rel. Lujan v. Hughes Aircraft Co.,*
   243 F.3d 1181 (9th Cir. 2001) .......................................................................8

*United States ex rel. Marcus v. Hess,*
   317 U.S. 537 (1943)...................................................................................17

- iii -

*United States ex rel. Ortega v. Columbia Healthcare, Inc.*,
   240 F. Supp. 2d 8 (D.D.C. 2003) .......................................................................8

*United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
   152 F. Supp. 2d 443 (S.D.N.Y. 2001) ...............................................................17

*United States ex rel. Rockefeller v. Westinghouse Elec. Co.*,
   274 F. Supp. 2d 10 (D.D.C. 2003),
   *aff'd sub nom. Rockefeller ex rel. United States v. Washington TRU Solutions, LLC*,
   No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004) ...................................16

*United States ex rel. Walsh v. Eastman Kodak Co.*,
   98 F. Supp. 2d 141 (D. Mass. 2000) .................................................................17

*Universal Life Church v. Coxon*,
   105 N.M. 57, 728 P.2d 467 (1986) ................................................................. 9-10

*Walburn v. Lockheed Martin Corp.*,
   431 F.3d 966 (6th Cir. 2005) ...........................................................................8

*Woods v. Empire Health Choice, Inc.*,
   574 F.3d 92 (2d Cir. 2009) ..............................................................................16

### RULES

Fed. R. Civ. P. 12(b)(6) ..........................................................................................9

Fed. R. Civ. P. 41(b) ............................................................................................14

N.M. Rule 1-041(B) .............................................................................................14

N.M. Rule 1-041(E)(2) ...........................................................................................5

N.M. Rule 1-016 ....................................................................................................5

N.M. Rule 1-019 ..................................................................................................14

### STATUTES

28 U.S.C. § 1441(a) ...............................................................................................6

31 U.S.C. § 3730(b)(5) ...........................................................................................7

NMSA 1978 § 44-9-5(A) (2007) ...........................................................................16

NMSA 1978 § 44-9-5(E) (2007) ..........................................................................1, 7

COI-1464858v3

## <u>PRELIMINARY STATEMENT</u>

The National Education Association of New Mexico, Inc. (the "Association") has filed this complaint in direct contravention of an express statutory provision that bars successive *qui tam* actions based on related facts. The New Mexico Fraud Against Taxpayers Act ("FATA") prohibits a plaintiff from bringing an action based on the facts underlying a first-filed *qui tam* action. NMSA 1978 § 44-9-5(E) (2007). But that is exactly what the Association does here. Just like the pending, first-filed *qui tam* action, the Association alleges that Austin Capital Management, Ltd. ("Austin Capital") failed to conduct enough due diligence on an investment that fell victim to the massive fraud perpetrated by Bernard L. Madoff, causing losses to the Educational Retirement Board ("ERB") and the State Investment Council ("SIC"). This action is barred by FATA's first-to-file rule, just like an earlier action filed by the Association against Austin Capital, which was dismissed for the same reason.

Separately, this action is barred by res judicata. Back in 2009, the Association sued Austin Capital for losses the ERB and SIC allegedly suffered as a result of Madoff's crimes, making many of the same factual allegations set forth in this complaint. That action was dismissed on the merits by a state court, and the Association did not appeal. The current complaint is nothing more than a collateral attack on that earlier, unappealed judgment. The Association already had its bite at the apple. It is not entitled to more.

Finally, this complaint must be dismissed because the Association lacks standing to sue on behalf of the ERB or the SIC. Because the Association disavows suing under FATA (the only statute allowing a private party such as the Association to sue on behalf of the state or a state agency), it lacks any legal basis to assert claims "on behalf of" the ERB or SIC. These claims

further fail because the Association seeks to assert claims for purported breaches of duties that were not owed to it.  The Association lacks standing to assert any claim for alleged breaches of duties owed to the ERB or SIC.

For these reasons, the Court should dismiss this complaint in its entirety.

## BACKGROUND

Defendant Austin Capital is a Texas limited partnership that manages funds-of-hedge-funds.  (¶ 10.)[1]  Austin Capital's parent is defendant KeyCorp, an Ohio corporation whose subsidiary operates one of the nation's largest banks.  (¶ 11.)  Defendant Victory Capital Management, Inc. ("Victory") is a New York corporation that is also a subsidiary of KeyCorp; Victory provides asset-management services to its clients.  (¶¶ 11-12.)

The plaintiff in this case is the Association, a New Mexico domestic nonprofit corporation whose members are employees of the public education and higher education systems. (¶¶ 8-9.)  As in its previous complaints, the Association alleges that the ERB and SIC invested money in funds-of-funds managed by Austin Capital and that the ERB and SIC lost approximately $25 million as a result of the Madoff fraud.  (¶¶ 2, 4.)

As before, the Association alleges that Austin Capital failed to perform due diligence (¶¶ 23-27, 60-73), which it supposedly misleadingly promised it would conduct (¶¶ 31-34), and for which it was paid fees (¶¶ 28-30, 74) that purportedly created incentives to turn a "blind eye" to Madoff (¶¶ 35-41, 51), and that Austin Capital ignored supposed "red flags" and gave Madoff a "free pass" on due diligence (¶¶ 42-50).

---

[1] All paragraph references, unless noted otherwise, are to the First Amended Complaint Against the KeyCorp Defendants for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Negligence and Punitive Damages (the "Third Complaint").

The Association contends that Austin Capital breached fiduciary duties that Austin Capital owed *not* to the Association but to the ERB and SIC.  (¶¶ 75-82, Count I.)  The Association claims that KeyCorp and Victory aided and abetted that alleged breach (¶¶ 83-85, Count I), and also alleges that all defendants are liable for negligent breach of duties owed to the ERB and SIC (again, not to the Association) (¶¶ 86-90, Count II).  The Association seeks an award of compensatory and punitive damages to the ERB and SIC, not to itself.  (¶¶ 91-97, Count III, Prayer for Relief.)

## PROCEDURAL HISTORY

This is the Association's third attempt to assert Madoff-related claims on behalf of the ERB and SIC.  The Court may consider the records of those earlier proceedings in deciding this motion to dismiss.[2]  *Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010) ("It is settled that the district court can take judicial notice of its own decision and records in a prior case involving the same parties.") (affirming dismissal of claims barred by res judicata) (citing *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008) (upholding district court's taking judicial notice of memorandum of order and judgment from a previous case involving the same parties in which the court made factual findings); *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) ("When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.")); *Briggs v. Newberry County School Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992) ("The record of the prior administrative and state court

---

[2] For the Court's convenience and in accordance with Local Rule 10.5, we have attached copies and relevant excerpts of papers of which this Court may take judicial notice and may consider in deciding this motion as exhibits to the declaration of Geoffrey J. Ritts ("Ritts Decl. Ex. __").

hearings in this case is a source whose accuracy cannot reasonably be questioned.  Accordingly, this Court takes judicial notice of the prior proceedings between the [defendant] and Plaintiff and, further, hereby considers those proceedings in ruling on Defendants' motion to dismiss."), *aff'd* 989 F.2d 491 (4th Cir. 1993) (Table).

On April 17, 2009, Frank and Suzanne Foy, as *qui tam* plaintiffs on behalf of the State of New Mexico, filed suit against Austin Capital and others in a New Mexico state court, alleging, among other things, violation of FATA in connection with losses arising from Madoff's fraud, and seeking damages on behalf of the ERB and SIC.  (Compl., *State of New Mexico ex rel. Foy v. Austin Capital Management, Ltd., et al.*, No. D101-CV-2009-01189 (Santa Fe Cty., New Mexico, filed Apr. 17, 2009), Ritts Decl. Ex. A.)  A month later, in May 2009, the Association filed a complaint also alleging violation of FATA and asserting common-law claims relating to Austin Capital's investment in a fund related to Madoff, and also seeking damages on behalf of the ERB and SIC (*see* ¶¶ 15, 16).  (Compl., *State ex rel. National Education Association of New Mexico, Inc. v. Austin Capital Management, Ltd.*, No. D101-CV-2009-1492 (Santa Fe Cty., New Mexico, filed May 12, 2009) (the "First Complaint"), Ritts Decl. Ex. B.)  For clarity, we refer to the Association's first action as "NEA-NM I."

Because the Association's First Complaint in *NEA-NM I* was filed after the *Foy* complaint, it was dismissed pursuant to the "plain meaning" of FATA's first-to-file rule, which expressly bars successive, related actions.  (May 14, 2010 Order (Pfeffer, J.), Ritts Decl. Ex. C; *see* ¶ 17.)  The Association did not appeal.

Rather than appeal the adverse judgment in *NEA-NM I*, the Association moved to intervene in the *Foy* action.  That motion was denied.  (May 27, 2011 Order (Pope, J.), Ritts Decl. Ex. D.)

On November 10, 2010, the Association launched another lawsuit against Austin Capital, by filing its second complaint (¶ 18).  (Compl., *State of New Mexico ex rel. National Education Association of New Mexico, Inc. v. Austin Capital Management, Ltd.*, No. D101-CV-2010-3863 (Santa Fe Cty., New Mexico, filed Nov. 10, 2010) (the "Second Complaint").)  Like the First Complaint, the Second Complaint asserted claims under FATA and New Mexico common law, purported to proceed with the Association as a *qui tam* plaintiff on behalf of the State of New Mexico, and sought damages for the benefit of the ERB and SIC related to investment losses caused by Madoff.  (*See* ¶ 18.)  The Association never served process on any defendant.  After months of inactivity, the Second Complaint was dismissed on the New Mexico state court's own motion pursuant to N.M. Rule 1-041(E)(2), for want of prosecution.[3]  (June 16, 2011 Order (Ortiz, J.), Ritts Decl. Ex. E.)

Instead of moving for reinstatement of the case as N.M. Rule 1-041(E)(2) provides,[4] the Association filed this Third Complaint.  The Third Complaint "disclaim[s] NEA-New Mexico's status as *qui tam* plaintiff under FATA" and confirms that the Association now has "cease[d] pursuing any FATA claim related to ERB's and SIC's Madoff-related losses."  (¶ 19.)  But the

---

[3] Rule 1-041(E)(2) provides: "Unless a pretrial scheduling order has been entered pursuant to Rule 1-016 NMRA, the court on its own motion or upon the motion of a party may dismiss without prejudice the action . . . if the party filing the action or asserting the claim has failed to take any significant action in connection with the action or claim within the previous one hundred and eighty (180) days."  NMRA, Rule 1-041(E)(2).

[4] "Within thirty (30) days after service of the order of dismissal, any party may move for reinstatement of the case.  Upon good cause shown, the court shall reinstate the case and shall enter a pretrial scheduling order pursuant to Rule 1-016 NMRA."  NMRA, Rule 1-041(E)(2).

- 5 -

Third Complaint still purports to assert common-law claims on the ERB and SIC's behalf, and the facts underlying those claims are the same facts upon which the First (and Second) Complaints were based.  Indeed, the Association concedes that the Third Complaint re-plows the same ground covered by the earlier pleadings; it characterizes the Third Complaint as a "continuation" of its First Complaint (¶ 15), and says that "[a] significant reason for this [Third] Complaint is to disclaim [the Association's] status as *qui tam* plaintiff under FATA" (¶ 19).  The Association still, however, purports to assert claims "on behalf of the ERB and SIC" arising out of the Madoff fraud.  (¶ 9.)

Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a).  (Dkt. No. 1.)  On September 8, 2011, defendants filed a tag-along notice with the Judicial Panel on Multidistrict Litigation (the "Panel"), notifying the Panel that this case is related to a number of other cases that have been transferred to the Southern District of New York for coordinated or consolidated pretrial proceedings under the caption *In re Austin Capital Management, Ltd. Securities and ERISA Litigation*, MDL No. 2075.  (Dkt. No. 5.)

## ARGUMENT

"Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The Third Complaint fails to state a plausible claim because:  (1) FATA's first-to-file provision expressly bars the Third Complaint; (2) the unappealed dismissal of the First Complaint is res judicata as to this Third Complaint; and (3) the Association lacks standing to assert claims on behalf of the ERB and SIC and lacks standing to assert claims for alleged breaches of duties not owed to it.

**I.**     **This Action Is Expressly Barred By FATA's First-To-File Provision.**

FATA's first-to-file provision expressly bars this action.  It does not matter that the

Association dropped its FATA claim from the current complaint to try to evade that bar.  FATA

provides:  "When a person brings an action pursuant to this section, no person other than the

attorney general on behalf of the state may intervene or *bring a related action based on the facts*

*underlying the pending action*."  NMSA 1978 § 44-9-5(E) (2007) (emphasis added).  This first-

to-file provision is substantively identical to that in FATA's federal counterpart, the False Claims

Act ("FCA"):  "[w]hen a person brings [a *qui tam* action] . . . , no person other than the

Government may intervene or bring a related action based on the facts underlying the pending

action."  31 U.S.C. § 3730(b)(5).  Like FATA, the FCA's first-to-file bar "clearly bars claims

arising from events that are already the subject of existing [*qui tam*] suits."  *United States ex rel.*

*LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232 (3d Cir. 1998).

Notably, the first-to-file provision does not bar only successive FATA *claims*, but more

broadly precludes any "related *action* based on the facts underlying the pending [FATA] action."

NMSA 1978 § 44-9-5(E) (2007) (emphasis added).  Thus, the fact that the Association dropped

its FATA claim has no bearing on the operation of the first-to-file bar:  because this is a "related

action" to *Foy*, the statute's plain language precludes it.

The Association cannot dispute that the *Foy qui tam* action is first-filed, as it was filed on

April 17, 2009—almost two-and-a-half years before the Association filed the Third Complaint.

Nor can the Association plausibly contend that the Third Complaint is not a "related action based

- 7 -

on the facts underlying" the *Foy* action.[5]  The "first-to-file bar is not limited to situations in which the original and subsequent complaints rely on identical facts." *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) (affirming dismissal of complaint as barred by first-to-file rule of FCA); *LaCorte*, 149 F.3d at 232 ("A later [*qui tam*] case need not rest on precisely the same facts as a previous claim to run afoul of this statutory [first-to-file] provision." ).  Indeed, "[a]n identical facts test would be contrary to the plain meaning of the statute, which speaks of 'related' qui tam actions, not identical ones." *Grynberg*, 390 F.3d at 1279.  Instead, the later-filed action is barred "so long as a subsequent complaint raises the same or a related claim based in significant measure on the core facts or general conduct relied upon in the first *qui tam* action." *Id.*  Thus, even if the later-filed action alleges additional or somewhat different details about the alleged misconduct, it still is subject to the first-to-file bar.  *Id.* at 1280; *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001) (affirming dismissal of later-filed action under first-to-file bar); *LaCorte*, 149 F.3d at 233 (same); *United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 13 (D.D.C. 2003) (same).

Here, the Third Complaint raises factually-related claims to those asserted in the first-filed *Foy* complaint.  As in *Foy*, the Association alleges that Austin Capital misrepresented its due diligence practices and failed to conduct due diligence properly (*compare Foy* Compl. ¶ 100, *with* Third Compl. ¶ 34); that Austin Capital failed to discover the same red flags (*compare Foy* Compl. ¶ 100-1, *with* Third Compl. ¶ 61; *compare Foy* Compl. ¶ 100-2, *with* Third Compl. ¶ 62;

---

[5] This issue has already been decided because, in *NEA-NM I*, Judge Pfeffer dismissed the First Complaint under the "plain meaning" of FATA's prohibition against successive, factually-related actions (May 14, 2010 Order ¶ 4, Ritts Decl. Ex. C), and the Association admits that the Third Complaint is simply a "continuation" of their First Complaint (¶ 15).

*compare Foy* Compl. ¶ 100-3, *with* Third Compl. ¶¶ 63-65; *compare Foy* Compl. ¶ 100-4, *with*

Third Compl. ¶ 66; *compare Foy* Compl. ¶ 100-5, *with* Third Compl. ¶ 67; *compare Foy* Compl.

¶ 100-6, *with* Third Compl. ¶¶ 68-69; *compare Foy* Compl. ¶ 100-8, *with* Third Compl. ¶ 46(a);

*compare Foy* Compl. ¶ 100-9, *with* Third Compl. ¶ 46(e)); and that the ERB and SIC would not

have sustained losses if Austin Capital had performed the due diligence it said would (*compare*

*Foy* Compl. ¶ 99, *with* Third Compl. ¶ 58).  That the Third Complaint may contain additional

allegations about Austin Capital's alleged misconduct changes nothing.  *E.g.*, *Grynberg*, 390

F.3d at 1279.  Because the similarities between the Third Complaint and the *Foy* complaint are

evident—both allege the same alleged misconduct, involve the same agencies, the same

investment, and the same purported losses—the Third Complaint must be dismissed under

FATA's prohibition of successive, related actions.

**II.     This Action Is Barred By Res Judicata.**

        Aside from FATA's first-to-file bar, the Third Complaint is separately barred by the

unappealed dismissal of *NEA-NM I*, which is res judicata as to this action.[6]  "[A] litigant is

ordinarily not entitled to more than one fair bite at the apple."  *Ford v. New Mexico Dept. of*

*Public Safety*, 119 N.M. 405, 407, 891 P.2d 546, 548 (Ct. App. 1994).  Thus, "a prior judgment

on the merits bars a subsequent suit involving the same parties or privies based on the same

cause of action."  *Myers v. Olson*, 100 N.M. 745, 747, 676 P.2d 822, 824 (1984).  Under New

Mexico law, res judicata precludes a party from relitigating the same claim or cause of action

when there is:  (1) an identity of parties or privies, (2) an identity of capacity or character of

---

        [6] Under New Mexico and federal law, "the affirmative defense of res judicata may properly be raised in a
motion to dismiss."  *Universal Life Church v. Coxon*, 105 N.M. 57, 58, 728 P.2d 467, 469 (1986); *Merswin v.*
*Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010) (affirming dismissal of claim pursuant to Rule 12(b)(6)
as barred by res judicata).

persons for or against whom the claim is made, (3) the same cause of action, and (4) the same

subject matter.  *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982)

*overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. 57, 728 P.2d 467

(1986).  Here, application of res judicata to dismiss the Third Complaint is particularly

appropriate because the doctrine's purpose "is to 'relieve parties of the cost and vexation of

multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions,

encourage reliance on adjudication.'"  *Id.* (citation omitted).

> **A.     The Causes Of Action Are The Same.**

The Association cannot plausibly dispute that this action and *NEA-NM I* share the same

cause of action because both are based on a common (if not wholly identical) nucleus of

operative facts.  Under New Mexico's "transactional" approach, two cases have the same cause

of action if they involve "a common nucleus of operative facts."  *Chavez v. City of Albuquerque*,

1998-NMCA-004, ¶ 23, 124 N.M. 479, 484, 952 P.2d 474, 479.  To determine whether the

causes of action are the same, this Court should consider "(1) the relatedness of the facts in time,

space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial

purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties'

expectations or business understanding or usage."  *Anaya v. City of Albuquerque*, 1996-NMCA-

092, ¶ 12, 122 N.M. 326, 330, 924 P.2d 735, 739.  In short, a "claim is essentially equated with

the transaction from which it springs."  *Myers*, 100 N.M. at 747, 676 P.2d at 824.

Each prong of this three-part test is satisfied.  First, the Third and First Complaints

involve the very same facts.  For example, both allege a failure to perform promised due

diligence, which if performed supposedly would have detected Madoff's fraud (*compare* Third

Compl. ¶¶ 23, 27, 28, 30, 31, 32, 34, 35, 36, 38, 39, *with* First Compl. ¶¶ 10, 11, 12, 13, 15, 16,

17, 18); both allege that Austin Capital gave Madoff a "free pass" due to an alleged relationship

with him through Pierre Schoenheimer and others (*compare* Third Comp. ¶¶ 42-45, *with* First

Comp. ¶¶ 19-22); and both allege that Austin Capital ignored supposed "red flags" (*compare*

Third Compl. ¶¶ 46(a)-(f), 47, 48, 50, *with* First Compl. ¶¶ 23(a)-(f), 24, 25, 26).  Many

allegations in the First Complaint are repeated verbatim in the Third Complaint.  (*Compare* First

Compl. ¶¶ 27-33, 36-51, *with* Third Compl. ¶¶  52-74).

     Second, the nearly-identical factual allegations form a "convenient trial unit" because the

witnesses and evidence relevant to the claims in the Third Complaint would be the same as for

the First Complaint.  *See Myers*, 100 N.M. at 748, 676 P.2d at 825.  And third, the parties

"certainly had every reason to expect" that *NEA-NM I* would "finally resolve" all claims

concerning the ERB and SIC's investments that the Association might purport to bring on their

behalf.  *See id.*  Thus, where, as here:  "the same operative facts form the basis of both"

complaints, "[t]he allegations in the [Third] complaint are almost identical to those in the [First]

complaint," and "the thrust of both actions" is the same, "[t]he same alleged wrongs are sought

to be redressed in both lawsuits" and the Third Complaint's claims are barred.  *See Ford*, 119

N.M. at 414, 891 P.2d at 555.

     All three causes of action asserted in the Third Complaint were brought in the First

Complaint.[7]  Besides, any "difference in legal theories is of little significance."  *Myers*, 100 N.M.

---

[7] The allegations of each count are substantively identical.  (*Compare* Third Compl. ¶¶ 76-82 (Count I, for breach of fiduciary duty), *with* First Compl. ¶¶ 62-69 (Count II, for breach of fiduciary duty); *compare* Third Compl. ¶¶ 87-88 (Count II, for negligence), *with* First Compl. ¶¶ 72-73 (Count III, for professional negligence); *compare* Third Compl. ¶¶ 92-94, 97 (Count III, for punitive damages), *with* First Compl. ¶¶ 76-79 (Count IV, for punitive damages).)

at 748, 676 P.2d at 825.  Because "a cause of action is to be viewed in the context of the

transaction from which it arose without regard to the various legal theories that may be available

to the parties," a party may not avoid preclusion simply by changing the legal theory or restyling

how the claims are brought.  *See id.* 100 N.M. at 747, 676 P.2d at 824.  That the Third Complaint

asserts a count for aiding and abetting an alleged breach of fiduciary duty also changes nothing.

Res judicata bars not only claims that were raised in the prior proceeding, but also claims that

could have been raised.  *Three Rivers Land*, 98 N.M. at 695, 652 P.2d at 245; *Moffat v. Branch*,

2005-NMCA-103, ¶ 10, 138 N.M. 224, 228, 118 P.3d 732, 736 ("litigants are encouraged and

afforded a full and fair opportunity to raise issues that exist between them in a single action []

[but t]here are consequences for the failure to take advantage of this opportunity") (citation and

quotation omitted).

**B.      The Parties And Their Capacities Are The Same.**

The Association's Third Complaint involves the same parties, acting in the same capacity,

as its First Complaint in *NEA-NM I*.  The Third Complaint, just as the First Complaint, is

captioned "State of New Mexico *ex rel.* National Education Association of New Mexico, Inc."

Of course, *ex relatione* signifies that the Association purports to bring both actions as relator on

behalf of the State of New Mexico.  Though the Association alleges that it no longer proceeds as

a *qui tam* plaintiff under FATA (¶ 19), it repeatedly asserts that it still purports to bring claims

"on behalf of the ERB and SIC" (Third Compl. ¶¶ 1, 5, 9), just as it did in the First Complaint

(First Compl. ¶¶ 1, 6).

"This requirement simply serves the fundamental notion that a person cannot be bound

by a judgment without reasonable notice and an opportunity to be heard." *Chavez*, 1998-

NMCA-004, ¶ 21, 124 N.M. at 484, 952 P.2d at 479.  The Association cannot plausibly contend

that it cannot be bound by the first judgment against it in *NEA-NM I* because it had both

reasonable notice and an opportunity to be heard.  In addition, that the Third Complaint also

names KeyCorp (Austin Capital's parent company) and Victory (another wholly-owned

subsidiary of KeyCorp) as defendants, though neither were defendants in the First Complaint,

does not change the preclusive effect of the first judgment.  "Res judicata does not require that

all parties to both suits be identical."  *Rosette, Inc. v. U.S. Dept. of the Interior*, 2007-NMCA-136,

¶ 35, 142 N.M. 717, 727, 169 P.3d 704, 714 (rejecting plaintiffs' argument that res judicata did

not bar its action where the plaintiff named additional defendants in its subsequent action);

*Chavez*, 1998-NMCA-004, ¶ 21, 124 N.M. at 484, 952 P.2d at 479 (concluding that the parties

were the same, and acted in the same capacity, "despite the number of different [defendants]

named in the district court action").

      **C.**      **The Subject Matter Is The Same.**

      Both the Third and First Complaints deal with the same subject matter.  Like the First

Complaint, the Third Complaint's claims relate to Austin Capital's conduct in connection with

allocating monies to a Madoff-related fund.  (*Compare* Third Compl. ¶ 1 (alleging that the

Association "brings this First Amended Complaint on behalf of the . . . ERB and . . . SIC for

damages that these state investing agencies suffered as a direct and proximate result of Austin

Capital's decision to place public money with Bernard L. Madoff"), *with* First Compl. ¶ 1

(alleging that the Association "seeks recovery of damages the investing agencies suffered when

Austin Capital . . . allowed public money to be lost in the giant Ponzi scheme contrived by

fraudster Bernard L. Madoff").

**D.      This Action Is Barred By A Final Judgment On The Merits In *NEA-NM I*.**

Finally, this action is barred by a final judgment on the merits in the Association's first action, *NEA-NM I*. "Unless the court in its order for dismissal otherwise specifies, . . . any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 1-019 NMRA, operates as *an adjudication upon the merits*." NMRA, Rule 1-041(B) (emphasis added); *accord* Fed. R. Civ. P. 41(b). Judge Pfeffer's order says nothing about its being anything other than an adjudication on the merits. (*See* May 14, 2010 Order, Ritts Decl. Ex. C.) Nor was its basis lack of jurisdiction, improper venue, or failure to join a necessary party. Judge Pfeffer's order was therefore, by its plain terms, a judgment on the merits.

In addition, the order was a *final* judgment on the merits. Contrary to the Association's baseless assertion that Judge Pfeffer dismissed its earlier complaint "without prejudice" (¶ 17), Judge Pfeffer's order says nothing about its being "without prejudice." (*See* May 14, 2010 Order, Ritts Decl. Ex. C.) Again, by its plain terms, the Order is a final ruling. It left nothing to be decided.

It makes no difference that the Association may think that Judge Pfeffer's ruling was wrong or may think that the dismissal should have been without prejudice, because the Association never bothered to appeal Judge Pfeffer's decision. The deadline for the Association to notice an appeal of the dismissal has long since come and gone. A final judgment, never appealed, is not subject to collateral attack. *In re Estate of Duran*, 2007-NMCA-068, ¶15, 141 N.M. 793, 798, 161 P.3d 290, 295 (citing *State ex rel. Sofeico v. Heffernan*, 41 N.M. 219, 234, 67 P.2d 240, 249 (1936) for the proposition that "a judgment that is not appealed becomes 'res

judicata as to any and all future litigation between the same parties' involving the question

resolved"); *Jencks v. Goforth*, 57 N.M. 627, 632, 261 P.2d 655, 658 (1953) ("The law is settled

on the principle that irregularity or improvidence in the judgment of a lower court must be raised

by appeal, and failure to do so ends the matter; there can be no collateral attack.").  But that is

exactly what the Association attempts to do here.  Unhappy with Judge Pfeffer's decision, the

Association—instead of appealing the decision—now impermissibly attempts to collaterally

attack the judgment here.  Res judicata aims to defeat these very tactics.  *E.g.*, *First State Bank v.

Muzio*, 100 N.M. 98, 101, 666 P.2d 777, 780 (1983) (res judicata gives effect to long-standing

public policy "that there be an end to litigation and that rights once established by final judgment

shall not again be litigated in any subsequent proceeding") (quotation and citation omitted),

*overruled on other grounds by Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 861 P.2d 935

(1993).  The Association's collateral attack of a final judgment on the merits must be rejected.

**III.      The Association Lacks Standing To Sue On Behalf Of The ERB Or SIC.**

      The Third Complaint must be dismissed for another, independent reason:  the Association

lacks standing to pursue the claims it seeks to assert.  To begin with, because the Association

asserts its claims outside of FATA's statutory authority, it lacks standing to sue on behalf of the

ERB or SIC.  And, in any event, the Association lacks standing to allege a breach of duties owed

not to it, but to the ERB and SIC.

      The Association affirmatively states that it is no longer pursuing "any FATA claim

related to ERB's and SIC's Madoff-related losses" (¶ 19), but it still purports to bring common-

law claims "on behalf of" the ERB and SIC.  There is no authority under New Mexico law for

the Association to assert these claims on behalf of the ERB or the SIC.  *See State ex rel. Coll v.*

*Johnson*, 1999-NMSC-036, ¶ 25, 128 N.M. 154, 162, 990 P.2d 1277, 1285 (concluding that plaintiffs lacked standing to assert contract-related claims on behalf of the state; observing that "the Attorney General can well represent the state on the foregoing claims raised by Plaintiffs, in her discretion").

The only authority under New Mexico law for a private person to bring *qui tam* claims on behalf of a state agency is FATA.  FATA authorizes a *qui tam* plaintiff to bring claims only for violation of that statute; it does not authorize any other claims.  NMSA 1978 § 44-9-5(A) (2007). Now that the Association has expressly disavowed that it is proceeding pursuant to FATA's statutory authorization (¶ 19), there is no authority that gives the Association the right to assert claims belonging to the state or state agencies.  To the contrary, a wall of authority prohibits the Association from doing so.  *Johnson*, 1999-NMSC-036, ¶ 25, 128 N.M. at 162, 990 P.2d at 1285. *See also, e.g.*, *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 98 (2d Cir. 2009) ("There is, however, no common law right to bring a *qui tam* action; rather, a particular statute must authorize a private party to do so."); *United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007) ("There presently is no common-law right to bring a *qui tam* action, which is strictly a creature of statute."); *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003) ("A relator in a *qui tam* FCA action does not have standing to assert common law claims based upon injury sustained by the United States."), *aff'd sub nom. Rockefeller ex rel. United States v. Washington TRU Solutions, LLC*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004); *United States ex rel. Burnette v. Driving Hawk*, 587 F.2d 23, 24 (8th Cir. 1978) ("No common law right to maintain *Qui tam* actions exists and authority to file such actions must be found in legislation."); *Conn. Action Now, Inc. v. Roberts Plating Co.*,

- 16 -

457 F.2d 81, 84 (2d Cir. 1972) ("[T]here is no common law right to maintain a *qui tam* action;

authority must always be found in legislation.") (citing *United States ex rel. Marcus v. Hess*, 317

U.S. 537, 541 (1943)); *Morgan ex rel. United States v. Science Applications Int'l Corp.*, No. 07-

cv-4612, 2008 WL 2566747, at *3 (S.D.N.Y. June 26, 2008) ("The Congressional grant of

private standing to sue in FCA cases does not extend to common law causes of action.");

*Brockovich v. Cmty. Med. Ctrs., Inc.*, No. CV-F-06-1609-LJO-DLB, 2007 WL 738691, at *4

(E.D. Cal. Mar. 7, 2007) ("it is well-settled that authority for a *qui tam* action must always be

found in legislation"); *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.

Supp. 2d 443, 451-52 (S.D.N.Y. 2001) (dismissing *qui tam* relator's common-law claims for lack

of standing); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D.

Mass. 2000) (holding that relator lacks standing to bring common-law claims of fraud, payment

under mistake of fact, and unjust enrichment).  The Association thus lacks standing to assert

these claims on behalf of the ERB and SIC.

    Moreover, the Association's claims fail because it lacks standing to sue for breaches of

duties that were not owed to it.  The Association never alleges that any defendant owed it any

duties.  Instead, the only alleged duties were owed to the ERB and SIC.  (*E.g.*, ¶¶ 82 ("Austin

Capital breached its fiduciary duty to the ERB and the SIC . . . ."); 87 ("Austin Capital owed the

investing agencies [ERB and SIC] a duty . . . ."); 89 ("KeyCorp and Victory Capital also owed

the ERB and the SIC a duty . . . .").)  Because only the ERB and SIC were owed duties, only they

can assert claims for breach of those duties.  *E.g.*, *Faniola v. Mazda Motor Corp.*, No. Civ-02-

1011 JB/RLP, 2004 WL 1354471, at *9 (D.N.M. Apr. 22, 2004) (assuming that Ford owed

Mazda a fiduciary duty, "it is only Mazda who could possibly assert a cause of action for breach

of duty against Ford") (applying New Mexico law); *GCM, Inc. v. Ky. Cent. Life Ins. Co.*, 1997-NMSC-052, ¶ 19, 124 N.M. 186, 192, 947 P.2d 143, 149 ("Only the injured party may assert a claim for aiding and abetting or intentionally causing another to breach a fiduciary duty.").  The Association thus lacks standing under New Mexico law to assert common-law claims on behalf of the ERB and SIC.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the entire complaint with prejudice.

Dated:  September 13, 2011                 Respectfully submitted,


OF COUNSEL:                                /s/ David Cunningham
                                           David Cunningham
Richard J. Bedell, Jr. (OH 0038891)        Thompson Hickey Cunningham Clow & April, PA
rjbedell@jonesday.com                      460 St. Michael's Drive, Suite 1103
Geoffrey J. Ritts (OH 0062603)             Santa Fe, NM  87505
gjritts@jonesday.com
JONES DAY                                  *Attorney for Defendants*
North Point                                *Austin Capital Management, Ltd., KeyCorp, and*
901 Lakeside Avenue                        *Victory Capital Management, Inc.*
Cleveland, OH  44114-1190
Telephone:     (216) 586-3939
Facsimile:     (216) 579-0212

COI-1464858v3

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2011 a true and correct copy of the foregoing document was served on the following known counsel via the Court's electronic filing system:

Jerry Wertheim
John Wentworth
Jerry Todd Wertheim
John V. Wertheim
Roxie P. Rawls-De Santiago
Jones, Snead, Wertheim & Wentworth, P.A.
P.O. Box 2228
Santa Fe, New Mexico  87504-2228
(505) 982-0011
jerry@thejonesfirm.com
john@thejonesfirm.com
todd@thejonesfirm.com
jvwertheim@thejonesfirm.com
roxie@thejonesfirm.com

Laura Pazin-Porter
Tom Rhodes Law Firm
126 Villita
San Antonio, Texas  78205
(210) 225-5251
lporter@rhodesvela.com


Attorneys for plaintiff


/s/ David Cunningham
David Cunningham
One of the attorneys for Defendants
Austin Capital Management, Ltd., KeyCorp,
and Victory Capital Management, Inc.

COI-1464858v3